No. 72.—ROLAND BAKER, plaintiff in error, *vs*. THE STATE OF GEORGIA. ZACHARIAH SHEFFIELD, plaintiff in error, *vs*. THE SAME.

[1.] The Court below told the triors, that if they found the challenged Juror to have formed, but not to have expressed an opinion, of the guilt or innocence of the accused, yet, he was competent: *Held*, that there was no error in this.

[2.] The accused asked the Court to permit the triors to retire to the Jury room, or some other private place, outside of the Court-room. The triors themselves, did not join in the request. The Court refused to grant the request, but had a corner of the Court-room vacated, and made the triors retire to it: *Held*, that not enough appeared from this to show the Court to have erred.

[3.] The trial before triors is best conducted, when conducted like the trial of a collateral issue before a Jury.

[4.] The twenty-second section of the eighth division of the Penal Code, which prohibits any person from aiding a prisoner to escape from jail, extends to the case of a white person, who aids a slave to escape ; at least, if the slave be detained on a capital charge.

High misdemeanor, in Marion Superior Court.    Tried before Judge CRAWFORD, March Term, 1854.    Consolidated and heard together in the Supreme Court.

T. Sheffield and R. Baker, were indicted for aiding a pris-

oner, a negro slave, to escape from jail; Sheffield was placed upon his trial. One of the Jurors being placed upon triors, the Court charged the triors, if they found that the challenged Juror had formed, but not expressed an opinion, from rumor, still, he was competent, and they might so return him. To these instructions, defendant excepted.

The defendant's counsel requested the Court to have the triors sent to the Jury-room, when they were considering of their verdict. This was refused, and the corner of the Court-room vacated for their use. To this, defendant excepted.

The evidence showed that the negro was in jail, upon a charge for an assault, with intent to commit a rape; on the evening of the escape, the negro pushed through the door and over the jailer, and ran off, the jailer pursuing; about one hundred yards from the jail, the negro fell and the jailer overtook him and got on him, and hallooed for help. A man came up and ordered the jailer to let the negro loose; he refused, and then the man drew a pistol and placed it to the jailer's head, with a threat to fire if he did not release the negro; the negro was loosed and escaped. Other evidence was introduced, to show a concert of action between the negro and this friend, and to identify the prisoners as the aiders.

Defendant's counsel, among other things, requested the Court to charge the Jury—

1st. That the provision in the Penal Code, in reference to aiding prisoners to escape, does not refer to, or include, the aiding of a negro slave to escape from custody.

2d. That if the Jury believed, from the evidence, that the offence committed was a rescue, they could not find the defendant guilty, under the indictment in this case.

The Court refused so to charge, and defendant excepted. Upon these exceptions error has been assigned.

But one ground of error was urged in the case of Baker, and that was, that the offence charged, could not be committed, in aiding a slave to escape.

BROWN & TUCKER, for plaintiff in error.

BROWN, Sol. Gen. and S. HALL, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] The Court told the triors, that if they found the challenged Juror to have formed, but not to have expressed, an opinion from rumor, he was competent. Was this right in the Court?

It appears that the whole action of the triors, was in public—was in the presence of the accused. Whatever was in evidence before the triors, therefore, was known to him. If there was before them any evidence tending to show that the Juror had formed "a *decided* opinion", that evidence, consequently, was known to him, and he might have put it in the bill of exceptions. And if such evidence existed, he should have put it there to show this Court the *possibility*, at least, that the charge of the Court below, might have misled the triors. If the evidence was such as not even to tend to show the formation, by the Juror, of an opinion which was "*decided*", it is manifest that the charge, if wrong, did no harm— it is manifest that the charge did not lead the triors to return as competent, a person who had formed a "*decided*" opinion, much less one who had formed a decided opinion *against the accused.*

As no such evidence is to be found in the bill of exceptions, where it would be so useful, it is to be presumed that none such existed, to be put there.

That being so, this charge of the Court did the accused no harm ; and not having been made the ground of a motion for a new trial in the Court below, it cannot, even if wrong, be made the ground of one in this Court.

But was this charge wrong? The plaintiff in error says, that according to *K. P. Boon vs. The State,* (1 *Kelly,* 619,) it was. In this, however, the plaintiff in error is mistaken. That case goes no farther than to say, that the formation *and expression* of a *decided* opinion, from rumor, amounts to a dis-

qualification. See *Griffin vs. The State*, decided at this term. This charge was not wrong.

[2.] It does not appear that the *triors* wished to retire to a private place, to deliberate concerning their verdict, or that they wished to deliberate at all; nor does it appear that the corner of the Court-room, which was cleared for their use, was not a sufficiently private place for deliberation, if they wished to deliberate. Enough, therefore, does not appear, to authorize this Court to say that the Court below erred in refusing to send the triors to the Jury-room, to deliberate concerning their verdict.

But still, it may not be amiss for this Court to avail itself of the opportunity to express its opinion, as to the proper mode of procedure, before triors.

Triors serve the purpose of a Jury for ascertaining a sort of collateral fact, in the progress of a cause. They should, therefore, be treated much as a Jury—be placed in the Jury-box—have the witnesses examined before them by the parties, or their counsel—be told the law by the Court, and be allowed to deliberate in the Jury-box, or, if need be, in a more private place.

[3.] The mode in use, at present, which confines the examination of the witnesses, to the triors themselves, and excludes the parties and their counsel from all participation in the examination, is found not to work well. The triors being generally persons unskilled in all matters of law, make slow, hesitating, pointless, and in all respects, inefficient examiners. The mode previously in use, in some of the circuits in this State, which treated the trial before triors, more like a trial of a collateral issue before a Jury, has as much authority in its favor, and works better in practice, for the accomplishment of the object of the trial. We think, therefore, it is to be preferred to the other.

The indictment, in this case, is founded on the twenty-second section of the eighth division of the Penal Code, which is in the following words:

"If any person shall aid or assist a prisoner, lawfully com-

Baker and another *vs.* The State.

mitted or detained in any jail, for any offence against this State, or under any civil process, to make his or her escape from jail, whether such escape be actually effected or not; or if any person shall convey, or cause to be delivered to such prisoner, any disguise, instrument or arms, proper to facilitate the escape of such prisoner, such person so offending, shall, on conviction, be punished by confinement and labor in the penitentiary, for any time not less than one year, nor longer than four years".

The Court was asked to charge the Jury, that this section does not refer to, or include, the aiding of a negro slave to escape, and the Court would not so charge. Was that right in the Court?

May a negro slave be a prisoner, lawfully committed or detained in jail, for any offence against this State—for the offence, say, of attempting to commit a rape on a free white female?

This offence, when committed by a slave, is a capital one. (*Cobb's Dig.* 987, 995.) And though not mentioned in the Code, it is equally with those that are mentioned, an offence against the State.

The Act of 1811, "to establish a tribunal for the trial of slaves", among other things, declares as follows : "And in case it should appear to them, (the Justices of the Peace,) after investigation, that the crime or crimes wherewith such slave or slaves, stand or stands charged, is a crime or crimes, for which he, she or they, ought to suffer death, such slave or slaves, shall immediately be committed to the public jail of said county, if any, provided it should be sufficient, or to the custody of the Sheriff, or to the nearest sufficient jail thereto".

"Such slave or slaves, shall immediately be committed to the public jail of said county", means that the slave or slaves, shall be imprisoned—be made a "*prisoner*" of, in the common jail of the county.

Of course, when so committed, the slave becomes a prisoner for " an offence *against this State*".

The answer, then, to the question is, that a slave may be a

prisoner, lawfully committed or detained in a jail, for any capital offence against this State—as for attempting to commit a rape on a free white female. It is by no means intended to be said, that a slave may not be such prisoner, when committed or detained for a less offence.

It therefore follows, that the slave, Sam, *might* have been such prisoner. And the facts show, that he *was* such; for they show that he was detained in jail, for attempting a rape on a free white female, under an order of the Judge of the Superior Court, remanding him to jail on the happening of a mis-trial, which occurred in his case.

This being so, the aiding of him to escape from jail, is something which falls within the very *words* of the section aforesaid, of the Code, on which the indictment is founded.

Falling within the words, why does it not fall within the meaning? For two reasons, says the plaintiff in error: First, because a slave is a chattel, and no chattel can be a prisoner. Secondly, because the Code, except in the thirteenth division, has white persons only, in contemplation, and therefore, as by the thirteenth division, a negro cannot be a prisoner. When it speaks of prisoners, it must mean such prisoners only, as happen to be white persons.

It is true, that slaves are chattels, for most purposes. It is equally true, that they are not so for all; for many, they are persons. The Act of 1770, (*Cobb's Dig.* 971,) declares, that negroes shall be "absolute slaves, and shall be taken and deemed, in law, chattels, personal, in the hands of their respective owners or possessors, to *all* intents and purposes, whatsoever". But it also contains many provisions which, nevertheless, treat slaves as persons—as beings capable of committing crimes, and worthy to be punished by form of law for crimes, when committed; and no beings, except persons, are thus capable and worthy. Sec's. 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 21, 23, 24, 29, 36, 38, do this; and there is much subsequent legislation, which also treats slaves as persons: as the Act of 1811, to establish a tribunal for the trial of slaves. (*Cobb's Dig.* 986,)—that of 1811, for the trial and punishment of

slaves and free people of color, (*Ib*. 987,)—that of 1817, to amend the Act of 1816, (*Ib*. 988,)—that of 1821, to amend the several laws for the trial of slaves and free persons of color, (*Ib*. 995,)—the Penal Code of 1833, itself. (*Ib*. 780.)

The way in which the Penal Code does this, deserves a moment's notice. The first division of that Code, is entitled: "*Persons capable* of committing crimes". This division, after laying down the rule with respect to infants, lunatics, idiots, married women and the drunken, lays it down with respect to *slaves*. It does so in these words:

"A slave committing a crime or misdemeanor, which, if committed by a free white person, would not be punished, by this Act, with death, by the threats, command or coercion of his or her owner, or any person exercising or assuming authority over such slave, shall not be found guilty; and it appearing from all the facts and circumstances of the case, that the offence was committed by the threats, command and coercion of the owner, or the person exercising or assuming authority over such slave, the said owner, or other person, exercising or assuming authority over such slave, shall be prosecuted for the said crime or misdemeanor". In these words, by implication, is acknowledged and declared, the *general* capacity of slaves to commit crime. This is done by the expression or specification of a single class of crimes, as those which slaves are *incapable* of committing—the expression of one thing, being the exclusion of others. And it is to be observed, that the class specified, is by no means large. It is limited in a two-fold way: first, to crimes *not capital*; secondly, to such only, of crimes not capital, as the slave commits by the *threats, command, or coercion*, of the master. The implication is, that in *all* cases *capital* by the Code, and in *all* cases *not capital*, except those in which the slave acts under the coercion of the master, he shall be considered capable of committing crime.

It follows from all this, that neither of the plaintiff in error's reasons is sufficient. For first, it is not true that slaves are only chattels, and not sometimes persons; and therefore, it is not true that it is not possible for them to be prisoners.

Baker and another *vs.* The State.

Second, it is not true that the Penal Code, except in the thirteenth division, has not in. contemplation, slaves. It has them in contemplation, also, in the first division; and in that division, it contemplates them as persons, and as persons capable of committing crimes; and as a natural, if not a necessary, consequence, it must contemplate them as capable of becoming *prisoners detained in jail for such crimes, when committed.*

Indeed, the thirteenth division is not a suitable place for the offence of aiding a person, white or black, to escape from jail. That division is for offences relative to slaves, considered as property, or as human beings—as persons to be protected from bodily harm, or as property to be secured to its owner. But the offence of aiding a prisoner, even if a slave, to escape, is not an offence relative to *slaves;* it is an offence relative to *public justice.* If, therefore, this division does not contain it, no argument is to be drawn from that, that it is not contained in its appropriate division.

These reasons of the plaintiff in error, not being sufficient to show the offence, which is within the words of the section, not to be within its meaning; and no other reasons appearing to us, which are sufficient to do that, we are obliged to consider it within the meaning, as well as within the words.

[4.] The refusal of the Court, therefore, to charge that this section of the Code does not refer to, or include, the aiding of a negro slave to escape from jail, was right.

The Court was also requested to charge the Jury, that if they believed the offence committed, to have been a rescue, they could not find the accused guilty, under the indictment.

This request seems to assume, that but one offence was committed. It is, too, not a request to charge, that if the Jury believed the offence committed by *the defendant*, to have been a rescue, they must acquit; but generally, if they believe the offence committed to have been a rescue, they must acquit.

Now, the evidence was such, that it was possible for the Jury to infer from it, that *two* offences had been committed; one of which, although it might be a rescue, was not committed

by the accused, but by Baker, or some other person ; the other of which, was an aiding of a prisoner to escape from jail, and might have been committed by the accused.   The evidence was such, that the Jury might infer from it, that the accused and Baker, at first, intended only the offence of aiding the slave to escape from jail ; and that the accused stuck to this single intention to the last, although Baker may, on his part, have added to it a new intention, called up by an unanticipated exigency—an exigency apparent to him alone, when separate from the accused, viz: the intention to free the slave from the jailer by *force*, at the time when the jailer had the slave in a state of re-arrest.   In short, the Jury might infer, from the evidence, that the rescue was committed by Baker, and was an offence, original, extemporaneous, and wholly independent of any other.

All this being so, the Court would not give the charge which it was requested to give.   It, however, gave this charge : that if the Jury " believed from the evidence, that prisoner and Baker came to town with a common intent to aid Sam to escape, and in prosecution of that intent, they believed that the prisoner was not the person who rescued the negro from the jailer, but was the person who held the horses, upon one of which the negro escaped, he was guilty, and they should so find him".

Now, if the charge had been given as requested, it might have misled the Jury.   It might have led them to believe, that if the crime of rescue was, in their opinion, committed by Baker, or some third person, they must acquit the accused, although, in their opinion, he might be guilty of the offence charged against him—the aiding of Sam to escape.   And a Court is certainly not bound to give any charge which may mislead the Jury.

The charge, as given, seems well to adapt itself to the state of the facts, as it is disclosed by the evidence.   It, in effect, tells the Jury, that even if there was a rescue in the case, in evidence, yet, if the accused was not the person who was. guilty of it, but was the person who was guilty of aiding Sam

to escape from jail, they must find him guilty. What objection can there be to this charge? None, unless it be that there is no evidence to authorize it. But there was evidence to authorize it.

It is by no means clear, that if the Court had gone so far as to say, if the accused *was*, instead of *was not*, the person who was guilty of the rescue, and was also guilty of the offence of aiding the slave to escape from jail, he ought to be convicted, it would have been error. It is far from certain that the offence of aiding a prisoner to escape from jail, is merged in a rescue of the prisoner. The inclination of my own mind, is towards the position, that aiding a prisoner to escape, cannot be merged in rescue.

There was no error, therefore, in the refusal of the Court to give the charge which it was requested to give, or in giving that which it gave.

In the case of Baker, the only ground of error insisted on, was the refusal of the Court to quash the indictment, on the motion of the defendant therein, placed on the ground that the section of the Code, as to aiding prisoners to escape, does not apply to slaves.

That the Court was right in not considering this a sufficient ground for the motion, I have already endeavored to show, by what I have said in the case of Sheffield.

We think the Court was right.

The decisions, therefore, ought to be affirmed in both cases.